4100986. Counsel, please. Thank you, Your Honor. May it please the Court, John Bisharri for the employee, Al Palant. The employee would first like to state that this case is not a case in which the employee is asking the Court to support the employee's request for compensation. That might be one of the first questions we would ask. I believe it would, so I thought I'd address it right off the bat. There is absolutely no evidence to support the Commission's decision in this case. Even under any Manassas Whig standard, there's nothing here to support the Commission's finding. There's no conflicting medical evidence at all? He had a continuous onset of left hip pain after the accident, continued to get medical care. He had pre-existing conditions, did he not? He did. He had a left hip prosthetic, and he also had a previous disc herniation that had been diagnosed and treated with one epidural steroid injection. So are you proceeding on the theory that this aggravated a pre-existing condition? Yes. And I think the medical testimony supports that finding. In fact, there is absolutely no causation opinion that states that the accident was not at least a contributing factor or a causal factor in the development of his current condition. The employer offered no opinion of its own, and the Commission's reliance upon the medical records from Dr. Mason, Dr. Panita, Dr. Payne, do not support their finding because nowhere in those records is there a statement that they did not believe that the accident caused whatever problem he was having. I think it was clear that the doctors were struggling with whether it was a problem related to the left hip prosthetic device or whether it was a radiculopathic finding. Let me throw this issue at you. Sure. It seemed to me that the Commission did not find your client credible. Yes. Are they precluded from making that finding and basing their decision on that finding? No, they are not. However, that's one of the reasons we asked the Court to look at its credibility finding. Respondent mentions other credibility findings made by the Commission, but there's nothing mentioned except for that one exchange regarding his complaints of a back pain. And that's been printed out by both myself and the employer in the brief, but clearly from that exchange, it is a stretch to state that the petitioner was talking about his back pain when it's referenced by the Commission. The petitioner was asked what he felt initially. He said he had back pain, left hip pain, and then he goes on to discuss his left leg pain. And he mentions that he has constant left hip pain. The very next question is, how long have you had that pain? He's already discussing the left hip pain. He's not even discussing back pain. And for the Commission to infer from that exchange an adverse finding of credibility, that this employee was attempting to embellish his complaints for some reason, when he was clearly talking about left hip pain, which is consistent with all of the medical records. From the very beginning, he had some back pain. There's no doubt about that. The employer brings that up in its response brief, that he complained of back pain immediately after the accident. He did, and we've never disputed that. Is it up to the Commission to draw inferences from the evidence? I mean, whose function is it to do that? It is the Commission's. I don't believe, but that's why I started out my argument by saying, this is not just about drawing different inferences. There is no evidence to support the Commission's decision. The manifest weight of this evidence establishes that this accident aggravated a pre-existing condition. You have medical records that there was an MRI taken afterwards. Dr. Narla states the MRI is worse. There is, Dr. Mason, immediately after this accident, immediately after, notes an absent Achilles reflex, which Dr. Russell suggests establishes a worsening of that condition. Nowhere in the medical records does it say that those conditions existed prior to this accident. So you're saying that Panady, Manson, and Payne, their findings do not suggest that the claimant's current condition and well-being was not related to his lumbar pathology? Was not related to what, I'm sorry? The lumbar pathology. Wasn't that what they were saying? It was not related. No, they weren't sure. Dr. Panada even suggested, it doesn't sound as if it's coming from the back, but on the off chance that it is, I'm going to send you for an epidural steroid injection. And Dr. Mason certainly felt the problem from the very beginning emanated from the back because he was talking about the lumbar disc and the radiculopathic findings he was having. So you're saying if they didn't specifically rule it out, and that seems to be part of your argument, even though they did not believe it was coming from the spine, somehow we elevate that to a finding in favor of proving the claimant's case. You're saying their opinions should have ruled out? No, those opinions don't go to the issue of causation. Those opinions go to the issue of what's wrong with this gentleman. And I don't believe you can make any inference about those doctors' opinions on the issue of causation when what they're addressing is where is this pain coming from? Is it the left hip prosthetic or is it the lower back? Dr. Narla or Dr. Mason referred the petitioner to Dr. Schott. He said, it's not your hip. Go back and talk to Dr. Pineda. You're back, doctor. Watch your back. And Dr. Pineda then doesn't do anything. I think he goes to see Dr. Payne. Dr. Payne says he doesn't think he's a surgical candidate. He doesn't say anything about, I don't believe your problem is related to the accident. Dr. Pineda never made such a statement. And certainly Dr. Mason never did or Dr. Narla. Dr. Russell testified, I think, very clearly that it was his opinion that this accident could have caused an aggravation of that condition. And the medical evidence suggested just such an aggravation. It's not even based upon guesswork. You have an MRI that shows there's a larger disc. And then you have an absent Achilles reflex that doesn't appear anywhere in the records before this work accident. So I'm not asking the court to substitute its own judgment. I'm saying that there's absolutely no evidence supporting the commission's decision here. There was no medical opinion stating there wasn't a causal relationship. If there's any medical opinion that, you know, cast doubt upon the case, where is this problem coming from? Is it the hip or the back? It has nothing to do with whether that hip or back pain was related to the accident. If they had found that it was a left hip pain instead of lower back pain, then that still doesn't address the issue of causation. Because he fell on his back and his left hip when he fell off the ladder. So that's entirely consistent as well. It just so happens it turned out the doctors eliminated the problem that's emanating from the left hip prosthetic and felt it was a radiculopathic finding. And the injections no longer provided relief. So there is no evidence. And I think the respondent in its response brief is struggling to even support the commission's decision because it can point to no evidence in support of the commission's decision. Well, we'll have to ask him that question. Unless he wants to waive argument. There is nothing in the record that supports a no causation finding. And I don't believe the commission's interpretation of that exchange is an appropriate interpretation. If you're going to make an adverse ruling on credibility, it should be clearer than that. It shouldn't be something where just grammatical construction would point to it being absolutely false as an inference. Just because the commission says the sky is purple doesn't mean that decision needs to be supported. That is not the standard of manifest weight. Manifest weight is if there's no evidence and an opposite result is clearly apparent, it should be reversed. And I think that is the case here. There's nothing to support the commission's finding. And we would ask that the court reverse the commission's finding on causation. Thank you very much. Counsel, please. Thank you. Brent Elward on behalf of Herald of State Builders. I completely disagree that they are asking this court to substitute its opinions and reweigh the evidence. And I would like to start out with one quick comment and then I get into the credibility part. There are three bases for the commission's decision in this case. One was it found that there was a pre-existing degenerative low back condition that had been confirmed on the prior MRI. Two, they found Mr. Cole was not credible. In ancillary to that, they looked at the medical records which talked about what his complaints were from the time of the accident. And they said his complaints of low back pain are not supported by the medical evidence, which were the medical records that were concurrent with his treatment from the time of the accident into 2008. Now, one of the things that's been made a big issue here is the testimony at page 31 of the record. And that's the transcript, page 570 of the record. That's what John went through here. What are your symptoms? Low back pain, et cetera. Which leg? The left one never stops. It's a constant pain. Has that been since the accident? Since the accident. Is that ambiguous? Yes, it probably is a little ambiguous. If that was the only statement that we have, I think that it would present a different case. But it's not. And we cited in our brief testimony from the petitioner at two different spots, 559, 560, actually 561, three different spots in the record, where he's asked about his back pain. He's saying, I had pain from the time this accident happened. It was going on in the low back pain. I hurt everywhere. At the time I fell, I hurt everywhere. My head hurt, my back hurt. Everything hurt. And we look at that testimony. We couple with an interpretation on page 31 of how do you view that testimony of this constant pain. And we couple that, more importantly, with the testimony of their doctor, Dr. Russell, where the petitioner tells Dr. Russell that I've had low back pain since the time of this fall. When you put all that together, that provides the necessary evidence that we can look at in the commission's decision to support their comment on page two, where they said he testified that he has low back pain ever since the accident. That's what he told Dr. Russell. And you can read that. In my interpretation, you can read that on page 31 of the transcript. When you couple that with the other testimony, I think there's evidence in the record to support that conclusion. Now, should they have cited two additional pages? Sure. Should we punish the commission for not citing every page where there's evidence that supports what their conclusions are reaching? No. We're going to look at the record as a whole and say, does that record support the findings? And it does on that point. Now, aside from the credibility issue, what about his overarching argument that he makes very vigorously there is, quote-unquote, no medical evidence in the record to support the commission's finding? How do you respond to that? I think there's two ways to respond to that. First of all, it's their burden of proof. Their doctor, Dr. Russell, testifies and offers his opinions. The commission disregards Dr. Russell's opinions and does not follow them for various reasons. Dr. Russell doesn't have full medical records. He's not aware of the prior MRI. He's not aware of the prior medical problems with the low back. He's not aware of any of the other opinions. And the petitioner gives him the information. I've had pain in my back since the fall. So you can disregard Dr. Russell's evidence. So, first of all, they fail to present any evidence to support their burden of proof that this is cause of delay. Second of all, you can look at the medical evidence from the date of this accident and say, where is the evidence? Where is the indication that this gentleman suffered any back problems based on the medical records from the time of his fall into 2008 when he decides to tell Dr. Russell that, yeah, all my low back problem is related to this accident? The answer is it's not there. And the commission did an excellent job of walking through that on page two, going through the six physicians, from Manson to Panetta, et cetera, and Dr. Narla. They go through all the evidence, and none of those doctors record any indication of any back problems, low back problems, and they don't believe that his back problems are causing his current complaints. So is there a smoking gun medical opinion from these gentlemen where they say, doctor, to a reasonable degree of medical certainty, is this condition cause-related? No, there's not one of those in here. But the medical evidence that the commission relied upon, which was the absence of any findings of any low back problems from the date of the accident until sometime in 2008 when he goes to Dr. Russell and says, everything since the accident, my back has hurt since the accident. They're entitled to look at that, and they're entitled to rely on that. Now, I would also point, I'd like to talk for a second about Dr. Narla. It also says that the MRI was interpreted by Dr. Narla as indicating that the condition had gotten worse, but that's not what it says. The MRI comparison that he discusses in his medical report, page 23 of the exhibit that he is quoted from, he refers to the bus sets of films that have been brought in from the MRI scans, and he does a comparison here. He says, it might be fractionally worse than before. I am not certain, given the quality of the films is different. That tells us nothing. You cannot look at that and say, oh, his condition is worse based on these films. Is Dr. saying it could be? I don't know. I can't really tell. The films are not good quality. You cannot rely on that. These arguments were made to the trier of fact in this case, the commission. The commission considered these arguments that are being made today. They considered the evidence. They considered Dr. Russell's opinions, and they rejected those opinions, and they found certain facts that now they're asking you, as a claimant, to set aside. And there's evidence in this record to support what the commission did. There's evidence that goes against it, sure, but they've got to show it's overwhelming. We've just got to show that there's evidence to support what the commission did, and I think we've done that. And for those reasons, we're asking you to affirm it. Thank you. Dr. Russell did, in fact, know about the prior treatment. They're all Springfield Clinic physicians. Dr. Russell testified about Dr. Payne's opinions, Dr. Pineda's opinions, their colleagues, they're all spine doctors. And he did not question their unwillingness to offer surgery to the employee at the time, because at that time they weren't sure of the problem. He felt it was also rather early on. With respect to this back issue, the back, and I think our brief does discuss this in great detail, the back symptoms were a secondary complaint. I think the records demonstrate that his primary problem was in the left leg and left hip. As a matter of fact, Dr. Russell is offering treatment for the problem of the left leg pain. That's what he's offering treatment for. It just so happens, and I think the court's seen this many times, back problems cause leg pain. And there is back pain that appears on occasion. He mentions back pain. It's not an overriding complaint of the employee here. Well, why were there no medical records and medical histories taken for that period of a year or so that document his complaints about the back pain? Are you talking about after he had seen Dr. Payne? Why? Because he hadn't seen a doctor who had offered him any treatment or any relief. Did he complain about the back pain continuously from the time of the accident throughout the? No, I don't think that there's any evidence that he did. That seems to be your opposing counsel's point. Right. He testifies at the hearing that he had passed in pain from the day of the accident. But again, Your Honor, I don't believe he testifies to that extent. The notations regarding the pages of 569 and 561, the petitioner was being asked about his symptoms immediately after the accident. He had back pain immediately after the accident. He had back pain the day after the accident. I don't think the employee has ever suggested that he had continuous back pain. His primary complaint was a left leg pain. That was what was debilitating to him. That's what the doctors were focusing on. That's what all the doctors were focusing on was this left hip and left leg pain. And that's why they were confused as to whether it was coming from the hip or the lower back. The back pain was not something that he ever testified. And I don't believe he testified that he was having constant back pain. I think that stretches the interpretation of his evidence, of his testimony. He wasn't talking about that leg pain. That leg pain was constant from the day of the accident forward, and that's what he was testifying to. I think the only interpretation, the only reasonable interpretation, is that's what he was testifying to. And certainly, if there is, I won't even say there's an ambiguity. I don't believe there's an ambiguity. But if an employer claims there is an ambiguity, then certainly an ambiguity shouldn't be used to detract from the petitioner's credibility. Third, I think the respondent is really trying to search, as the commission does, for some basis to deny this man his compensation when there isn't any medical or legal justification for doing so. I'm going to ask that you reverse the commission's decision. Thank you, Counsel. The court will take the matter under advisory with disposition.